## Altman *v.* Ryan, Appellant.

402

Argued May 28, 1969. Before BELL, C. J., COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*William L. McLaughlin,* for appellant.

*John S. Halsted,* with him *Gawthrop & Greenwood,* for appellees.

OPINION BY MR. JUSTICE ROBERTS, October 9, 1969:

Appellants operate a freight forwarding business under the name Ryan Express at a location which it has occupied since the Fall of 1967. From September, 1967, until December of the same year, all of the operations of the business were conducted during the daytime hours, but since that time nighttime loading has been carried out between the hours of 11 p.m. and 7 a.m. Appellees are owners of a garden apartment built in 1963 adjacent to appellants' freight forwarding operation. They filed a complaint in equity in May, 1968, alleging a nuisance arising out of appellants' nighttime operation.

A partial hearing was held on May 28 due to the fact that appellants' counsel had only been recently engaged. At that time nine of the residents of appellees' apartment building testified to the disturbing noises they heard during the night. At the continuation of the hearing on July 1 both the building superintendent and one owner testified as to the complaints which they had received from tenants. In addition, the owner indicated that several of the tenants had threatened to vacate if the noise was not stopped. At the close of the hearing a conference was held at which time it was agreed that appellants would follow certain procedures "to decrease and/or eliminate the noise and disturbance emanating [from] the opera-

tions during normal sleeping hours. . . ." A decree to that effect was entered on July 15, 1968.

According to the chancellor, "we arrived at an agreement, and an order was entered pursuant to that agreement, with the understanding that if the situation would not seem to be corrected by the carrying out of the terms of the agreement, we would hear additional testimony if it was necessary." Therefore, because appellees alleged that the noises had continued during July and August, another hearing was held in early September at their request. Following this hearing, the court below entered a decree enjoining appellants' loading operation from the hours of 11 p.m. to 7 a.m. because "the evidence shows that the noise arises from an improper conduct of the business and that remedial measures to lessen the disturbance have not proved successful." Exceptions were taken and dismissed by the court en banc and this appeal followed.

Appellants' first contention on appeal is that there is insufficient evidence to support a finding of a nuisance by the court below. This argument seeks to attack the sufficiency of the evidence at the hearing held on May 28, the continued hearing of July 1, and the one held in early September. However, since this appeal is from the second decree, we need only examine the evidence introduced to support that determination of the chancellor. In so doing we must be mindful of the fact that the chancellor's findings of fact have the effect of a jury verdict when approved by the court en banc and adequately supported in the record. *Albert v. Lehigh Coal & Navigation Co.*, 431 Pa. 600, 246 A. 2d 840 (1968); *Schulman v. Serrill*, 432 Pa. 206, 246 A. 2d 643 (1968).

The court below in its findings of fact, found that "From November, 1967, continuing until the date of the hearing the activities on the premises of defendant[s] have resulted in clanging sounds, steel plates

banging when hit by hand dollys, and other metallic noises from cargo being loaded or unloaded, particularly automobile tailpipes which are thrown onto trucks at all hours of the night. . . . The aforesaid activities have resulted in disturbing the peace and quiet and interfering with the rest and sleep of occupants of the apartment units." A careful examination of the record of the September hearing reveals more than adequate testimony to support such a conclusion.

Mr. Dolan, the tenant in the closest apartment, testified "the only thing that has been improved [since the first decree] is the deck plate. . . . Well, we still hear the noise of the cargo being dumped in the truck, of the cargo being shifted, or being taken off; sometimes they don't use the deck plates at all; they just drop it from the floor right onto the truck platform itself. The echo of the material being moved in the truck, the pallet mover makes a lot of noise still. . . . Right, the pallet mover just as bad as it ever was, particularly last night, about three o'clock in the morning, on through up until about four-thirty." Mr. Dolan's wife corroborated most of her husband's testimony on this issue. "I constantly hear the loading of trucks. You can't avoid it, when you are putting cargo in a truck, you are going to get the noise; and we hear it."

Appellants argue that the evidence of the third hearing was insufficient since only Mr. and Mrs. Dolan testified. However, there is testimony in the record to indicate that other tenants were prepared to testify, but were unable to get away from their employment due to the short notice they had received. It was the responsibility of the chancellor to determine the credibility and weight to be given the Dolans' testimony and, under the circumstance, it would not be appropriate for our Court to reverse the chancellor's determination because these two people were the only witnesses available.

Appellants urge that the September hearing was held to determine whether appellants had complied with the terms of the first decree and that the evidence indicates there was substantial compliance. However, this misconstrues the real purpose of the hearing which the trial judge announced at the very outset: "if the situation would not seem to be corrected by the carrying out of the terms of the agreement, we would hear additional testimony. . . ." Thus, assuming arguendo that the facts at the September hearing did establish compliance with the first decree, the determination of whether the nuisance continued to exist despite such compliance was crucial. The court found that the nuisance continued and therefore entered its second decree.

Next, appellants point to the recent case of *Colehower v. Wayne Iron Works,* 55 Del. Cty. 52 (1967), in which the court enjoined the operating of any apparatus of noisy character, but did not prohibit other activities. Presumably, appellants are arguing that a similar limited decree should be entered in the present case. However, this argument ignores the fact that appellants have already been given an opportunity to modify the nighttime operations to eliminate the objectionable noises. Despite the fact that these changes were made, the chancellor still found the nuisance continuing. Therefore, the only alternative available to the court was to enjoin the operation entirely, at least until such time as additional means are found which would assure the tenants of appellees' building peace and quiet at night. See *Ladner v. Siegel,* 298 Pa. 487, 148 Atl. 699 (1930).

Finally, appellants argue that the decree violates the constitutional protections of the fifth and fourteenth amendments. Although there is no further articulation of how these amendments apply to this case, apparently appellants are urging that such a de-

cree represents a violation of the due process clause. The short answer to this contention is that appellants are raising it on appeal for the first time. Our Court will not consider such an issue unless it has been raised or considered by the court below. "Matters not raised in, or considered by, the court below cannot be invoked on appeal even though they involve constitutional questions." *Montgomery County Bar Association v. Rinalducci*, 329 Pa. 296, 298, 197 Atl. 924, 925 (1938); see *Brunswick Corp. v. Key Enterprises, Inc.*, 431 Pa. 15, 244 A. 2d 658 (1968); *Schofield v. Donato*, 429 Pa. 435, 240 A. 2d 541 (1968).

In summary, it should be noted that appellants will not be put out of business by this restriction; there is evidence that appellants operated the business without nighttime loading for an extended period of time. In addition appellants have no vested right to load trucks at any hour of the day or night in such a noisy and disturbing fashion as this record reveals. Their right to do this must be limited by the right of the neighbors in the area to be free of disturbing noises during normal sleeping hours. The court below has made an accommodation between these two competing interests and has reached a decision which we believe is equitable and fair to all concerned.

Decree affirmed. Each party to pay own costs.

Mr. Justice COHEN would modify the decree by restraining unreasonable noise.

Mr. Justice JONES took no part in the consideration or decision of this case.