## DiAmbrosio v. Redevelopment Authority of Philadelphia.

Argued February 8, 1971, before President Judge BOWMAN, and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER, and ROGERS.

*Samuel Smith,* with him *Joseph V. Furlong, Jr., Edward C. Harkin,* and *Tabas Smith & Furlong,* for appellants.

*Paul Shalita,* for appellee.

Opinion by Judge Rogers, May 20, 1971:

This is an appeal from a judgment entered upon a finding of a judge awarding damages for condemnation of lands after trial without a jury.

Prior to 1962, the appellants, Samuel DiAmbrosio and Beatrice DiAmbrosio (DiAmbrosio) owned a tract of land known as 308-10 Oregon Avenue in South Philadelphia. In 1962, DiAmbrosio entered into agreements with Acme Markets, Inc. (Acme), under which DiAmbrosio was to purchase a premises adjoining 308-10 Oregon Avenue and lease to Acme Markets both the tract owned and the one to be acquired at a rental of $12,500 per year. Acme agreed to lend DiAmbrosio $70,000 for the purchase of the adjoining property. As further consideration Acme agreed to pay DiAmbrosio the sum of $9,000 to defray the expense of removing junked automobiles on his premises. It was Acme's purpose to construct and operate a supermarket at the Oregon Avenue location.

After the agreements effectuating the arrangements just mentioned had been executed, but before any action was taken thereon, one Nat Levin, principal of Ranchland Builders, Inc. (Ranchland) conceived the idea of creating a large shopping center complex at the Oregon Avenue location and obtained ownership of or rights in several parcels of ground near the DiAmbrosio tract. Ranchland acting by Levin induced Acme and DiAmbrosio to terminate the agreements between them and the following arrangements were proposed in substitution thereof:

(1) Ranchland would construct the Acme Supermarket on land owned by Ranchland and lease the same to Acme.

(2) The DiAmbrosio property at 308-10 Oregon Avenue would become the parking lot of the shopping center of which the Acme Supermarket would be a part.

(3) Ranchland would lease from DiAmbrosio 308-10 Oregon Avenue for the sum of $8,000 per year.

(4) DiAmbrosio would receive, in addition to the rentals provided for in the Ranchland lease, the sum of either $18,000 or $20,000[1] and an equity in the shopping center complex, expressed at the trial by DiAmbrosio's counsel as "two percent over three and one-half million," presumably of sales at the shopping center.

(5) Since a parking lot was vital to the success of the center, Acme, Ranchland and another tenant, First Pennsylvania Bank, required protection in the use of certain of the properties involved for this purpose. This was to take the form of a document referred to as a Reciprocal Parking Agreement conferring upon Acme, the First Pennsylvania Bank, Ranchland and DiAmbrosio the right to use said properties, including the DiAmbrosio land, as a parking lot for a term of 50 years for consideration of one dollar per year.

(6) As protection for DiAmbrosio, an assignment of rent and escrow agreement was to be entered into among the parties which provided that the rental payments due Ranchland should be paid to a bank as escrow agent to be applied first to mortgages and taxes and, to the extent possible, to DiAmbrosio in satisfaction of the Ranchland rental obligation.

The Levin-Ranchland development proposal was agreed upon by all parties and the several documents effectuating it were executed at a settlement in September 1963. Throughout these negotiations and at the settlement, DiAmbrosio was represented by counsel.

The Acme Supermarket was constructed and commenced business. In 1965, Ranchland became insolvent and defaulted on its lease with DiAmbrosio. The rental payments made under the escrow agreement were not sufficient to reach Ranchland's obligation to Di-

---

[1] Each amount appears in the record.

Ambrosio for rent. DiAmbrosio thereupon engaged new counsel and upon advice of counsel threatened to fence a portion of the parking lot in use by Acme and First Pennsylvana Bank. Acme commenced an equity action to enjoin such interference with its rights under the Reciprocal Parking Agreement. The trial judge to whom the case was assigned met with counsel for the parties and suggested that they attempt to effect a private settlement. The only agreement reached was an engagement by Acme to pay DiAmbrosio rent for a month and one-half only.

At this point, the Redevelopment Authority of the City of Philadelphia (Authority) entered the picture and on December 20, 1965, condemned the DiAmbrosio parking lot. No preliminary objections to the eminent domain proceeding were filed. During the pendency of the condemnation action, DiAmbrosio properly sought and through the Common Pleas Court was paid by the Authority the sum of $117,500 as estimated just compensation.[2] Acme and First Pennsylvania Bank, as parties to the Reciprocal Parking Agreement, acceded in writing to this payment, and have never claimed damages for condemnation of the parking lot, having entered into agreements with the Authority assuring them of its use.

The case was tried before a judge without jury. Evidence was offered as to the value of the property, both as affected and as unaffected by the Reciprocal Parking Agreement. DiAmbrosio took the position that the total damages for the taking should be paid to him by reason of the fact that the other parties to the Reciprocal Parking Agreement made no claim thereto. The Authority contended that DiAmbrosio's damages should not exceed the value of the property as encumbered by the Reciprocal Parking Agreement.

---

[2] See Eminent Domain Code, 1964 Special Sess., June 22, P. L. 84, Art. IV, Section 407, as amended, 26 P. S. 1-407.

The trial judge found that the total amount of damages for the property, unencumbered by the Reciprocal Parking Agreement was $196,000 and awarded this entire amount to DiAmbrosio because, in the court's view, there were no other claimants. The Authority appealed to the Supreme Court from the judgment entered in favor of DiAmbrosio. The Supreme Court vacated the judgment and remanded the record to the lower court with instructions to apportion the award. *Philadelphia Redevelopment Authority Appeal,* 435 Pa. 370, 257 A. 2d 520 (1969). The Supreme Court held that the Authority, having settled the claims of the interests of Acme and First Pennsylvania Bank, should not be required to pay that value to DiAmbrosio.

The lower court, after an informal conference with counsel for the parties but without a further hearing, awarded DiAmbrosio the sum of $50,900, being the amount testified to by DiAmbrosio's expert witness as his opinion of the value of the property as encumbered by the Reciprocal Parking Agreement. This amount is substantially in excess of the amounts testified to as such value by the Authority's expert witnesses.

This appeal by DiAmbrosio is from the judgment for $50,900 in their favor entered on that award.

Appellant's principal contention here is that the condemnation was invalid because it was undertaken by the Redevelopment Authority for the private interests of Acme and First Pennsylvania Bank and not for a public purpose. We have carefully examined the record of these proceedings, including the briefs filed with the Supreme Court in the earlier appeal. Nowhere in all of this did DiAmbrosio assert that the proceedings lacked validity for this or for any other reason. Until the instant appeal, their whole effort was to obtain the total amount of the damages for the taking. No preliminary objections were filed by DiAmbrosio. Sec-

tion 406 of the Eminent Domain Code[3] provides in part: "Preliminary objections shall be limited to and shall be the exclusive method of challenging (1) the power or right of the condemnor to appropriate the condemned property . . . Failure to raise these matters by preliminary objections shall constitute a waiver thereof." Further, as mentioned, DiAmbrosio applied for and received a substantial payment as estimated just compensation due him in these proceedings. Finally, we may not entertain this ground of attack raised here for the first time in these extensive proceedings. *Altman v. Regan,* 435 Pa. 401, 257 A. 2d 583 (1969).

The appellant's second contention is that the trial judge erred in apportioning damages in assigning any value to the Reciprocal Parking Agreement because that agreement lacked or was supported by inadequate consideration or was unconscionable. The same argument was made in DiAmbrosio's brief in the appeal to the Supreme Court and the case was nevertheless remanded for apportionment. Appellant's attack on the agreement is groundless. A reading of the agreement itself clearly reveals that its principal characteristic was, as its title suggests, reciprocity. Not only was DiAmbrosio's land subjected to the parking rights, so also was that of Ranchland, Acme and the Bank. Each of the parties expressed themselves as intending to be legally bound thus supplying consideration under the Uniform Written Obligations Act of 1927, May 13, P. L. 985, Section 1, 33 P.S. 6. Furthermore, and most importantly, the instrument was executed by the parties as one part of a business settlement at which DiAmbrosio received: (1) A lease from which they were to receive $8,000 per year; (2) $18,000 or $20,000; (3) Rights under an escrow agreement; (4) The discharge of a $70,000 mortgage; (5) An equity in the shopping center

[3] 26 P.S. 1-406.

venture. Where several instruments are executed as part of one transaction, the benefit accruing to one of the parties in one instrument is consideration for his promise in another. 8 *P.L.E.,* Contracts, Section 47; 17 Am. Jur. 2d, Contracts, Section 104.

The appellants in their brief and argument have made sweeping allegations of fraud on the part of all other parties to this transaction with regard both to the condemnation proceedings and to the procurement of their assent to Reciprocal Parking Agreement. The charge of fraud in the condemnation proceedings, in addition to coming very late in these proceedings, has no factual support whatsoever in the record.[4] As for the Reciprocal Parking Agreement, we have noted that the appellants were represented by counsel in the negotiations and at the settlement of which execution of that agreement by the parties was a part. The evidence suggested as fraud inducing the agreement was Samuel DiAmbrosio's testimony that one McFadden, an Acme representative, told him in late 1962 or early 1963 that Acme would "guarantee the rent." This was at a time prior to the execution of the lease *with Acme,* which the record shows was executed early in 1963 and was terminated by written agreement in September 1963 coincident with the new arrangements. This statement certainly referred to that lease and just as certainly did not refer to an instrument executed in connection with an entirely new scheme of development.

The trial judge on remand properly apportioned the total damages based upon the adequate record before him.

Judgment affirmed.

---

[4] This condemnation was one of many made in the redevelopment of the so-called Whitman Urban Renewal Area, a project encompassing a large area of South Philadelphia near the Walt Whitman Bridge.

DISSENTING OPINION BY JUDGE MANDERINO:

I have often thought as a lawyer, and as a judge, that references to "shocking the conscience of the court" really were not intended to literally describe the real impact of what medical science calls "shock". In this case, I have experienced "shock" in almost the literal, scientific meaning of the word. In a confusing jungle of legal jargon, a citizen has had a great sum of money ($145,100) taken away from him by a court order which has no rational foundation in law or justice.

Samuel and Beatrice DiAmbrosio owned a piece of property worth $196,000, according to a court determination which no one has ever disputed. The property has been taken away from the DiAmbrosios by the Redevelopment Authority of the City of Philadelphia and the DiAmbrosios are only entitled to $50,900, according to the order of the court below which is being affirmed in this appeal. This result is incredible.

When the Redevelopment Authority took the DiAmbrosios' property, the trial court initially awarded the DiAmbrosios the full $196,000. Later, however, the Supreme Court of Pennsylvania determined that the DiAmbrosios were to receive the $196,000, minus any amount which someone else might be entitled to *if* somebody else had an interest in the property and *if* such interest were properly evaluated. The Supreme Court *did not decide* that anybody else had an interest *nor* did it decide the value of any other interest *if* any such interest, in fact, existed. The Supreme Court *ordered the trial court* to determine *if* anyone else had an interest and *if* any such interest existed, what the value of such other interest would be. In *Re Development Authority of City of Philadelphia*, 435 Pa. 370, 257 A. 2d 520 (1969).

After the Supreme Court's decision which specifically said that any other claimant must "prove the existence and the value" of another interest in the property,

the trial court entered an order which in effect concluded that somebody else other than the DiAmbrosios had an interest in the property worth $145,100. There is no proof in the record which will substantiate anybody else's claim to the amount of $145,100. The trial court strongly so intimated in a very able and detailed original opinion but did not explicitly so decide because there were no other claimants. When ordered by the Supreme Court to make such a determination, the trial court arrived at an opposite conclusion without any explanation. The DiAmbrosios have disputed from the beginning of this litigation that anybody else had any valid interest. Belatedly, the Redevelopment Authority claimed that the DiAmbrosios did not own the full interest. Merely because the Authority says so doesn't make it so. The DiAmbrosios are entitled to have their day in court on this issue. Until that happens, no one, without shocking the conscience of this judge, can have a just claim to $145,100.

I must point out also that the alleged other interest which has never been proven or established and which is supposed to diminish DiAmbrosios' recovery of the total $196,000, is an interest, *if* it exists, for which no one ever paid the DiAmbrosios anything—except maybe one dollar. The purchase of a $145,100 value (if such a bargain ever took place) for one dollar would have been condemned even in the peppercorn society of yesterday's law.

This case is replete with talk of leases, parking agreements, reciprocal agreements, condemnation claimants and other such lawyer language. I have deliberately refused to speak of the case employing such terminology because the forest of justice is obscured in this case by the analysis of the trees.

The DiAmbrosios should be awarded the full $196,-000 or this case should be remanded for a determination of what interest, if any, does not belong to the DiAm-

brosios and the value of any such interest. The Supreme Court ordered this to be done a long time ago and it has never been done.

Judge KRAMER joins in this dissent.