362 A.2d 234
COMMONWEALTH of Pennsylvania, Appellant,

v.

Frank BARTOLOMUCCI, Appellee.

Supreme Court of Pennsylvania.

Argued March 12, 1976.

Decided July 6, 1976.

340

Robert F. Banks, Asst. Dist. Atty., Charles S. Hersh, Mercer, for appellant.

Herman M. Rodgers, Rodgers, Marks and Perfilio, Sharon, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

EAGEN, Justice.

Frank Bartolomucci was brought to trial on November 15, 1973 for the unlawful delivery of methaqualone tablets in violation of the Controlled Substance, Drug, Devise and Cosmetic Act, Act of April 14, 1972, P.L. 233, No. 64, § 13(a)(30), 35 P.S. § 780–113(a)(30) (Supp. 1975–76), *as amended*, October 26, 1972, P.L. 1048, No. 263, § 1.[1] The trial was completed about 11:30 a. m. on November 16 and jury deliberations began immediately. From 12:00 noon until 1:00 p. m., the jury recessed for lunch. At 1:00 p. m., deliberations resumed and continued until 5:15 p. m. when the jury recessed for dinner. Deliberations resumed at 6:45 p. m.

At 10:10 p. m., the trial judge, the district attorney, defense counsel and the tipstaff for the court attended a conference in chambers during which the following occurrences were noted of record: At 8:45 p. m., the fore-

1. The charge resulted from a single sale of fifteen methaqualone pills for the sum of $15.00.

man had informed the tipstaff that the jury was "bogged down" and was unable to reach a verdict. The tipstaff then told the foreman the trial judge had left instructions that the jury be kept in session until a verdict was reached and that, unless the jury insisted, the tipstaff would not call the trial judge. The jury did not specifically ask to see the trial judge. Moreover, during this conference defense counsel indicated he had no objection to the colloquy between the tipstaff and the jury foreman earlier in the evening.

During the same conference, the trial judge sought both the district attorney's and defense counsel's position with regard to discharging the jury. Defense counsel stated he and Bartolomucci had anticipated the question and would not agree to the discharge. The trial judge then offered to repeat his instructions to the jury but defense counsel indicated he was not yet concerned with doing so.

At 10:46 p. m., another conference was held in chambers during which the tipstaff informed the trial judge, the district attorney, and defense counsel that the foreman had informed him the jury was hopelessly deadlocked and asked the tipstaff to so inform the court. The trial judge again sought the district attorney's and defense counsel's position with regard to discharging the jury. The district attorney indicated he thought discharge was appropriate. Defense counsel requested additional instructions, specifically, instructions relating to the responsibilities of jurors to each other and to themselves. The trial judge stated that such instructions had already been given in accordance with the American Bar Association's recommended Standards Relating to Trial by Jury, § 5.4 and that he had a serious question as to the effect of merely repeating such instructions. The trial judge thereupon recalled the jury to the courtroom at 10:55 p. m. and, without any further questions or inquiry, declared a mistrial and discharged the jury.

■■ When the Commonwealth sought to bring Bartolomucci to trial again defense counsel objected on the grounds of double jeopardy but this objection was overruled. Bartolomucci was thereafter tried and convicted. Post trial motions were denied and judgment of sentence was imposed. Bartolomucci appealed to the Superior Court. That court, in a five-two decision, reversed the judgment of sentence stating, inter alia, that Bartolomucci's second trial violated his right against being put twice in jeopardy because the jury was improperly discharged in the first trial. The Commonwealth petitioned for allowance to appeal from the order of the Superior Court and we granted the petition.[2]

■ The Superior Court ruled the discharge of the jury at the first trial was improper because the trial judge failed to communicate directly with the jury before declaring the mistrial. The Commonwealth urges this was error because Bartolomucci did not advance this particular issue in the Superior Court and that court raised it *sua sponte*. We find this position to have no basis in fact since Bartolomucci's brief in the Superior

---

2. Bartolomucci asserts that this Court is without jurisdiction because it entered an order denying the petition of the Commonwealth on June 19, 1975 and then, without the Commonwealth petitioning for a reconsideration of that denial order, entered an order on July 23, 1975 vacating the denial order of June 19, 1975 and granting the Commonwealth's petition. The order of June 19, 1975 was mistakenly entered by this Court due to a breakdown in communications. Under such circumstances, Bartolomucci's position is without merit. It is fundamental that a court has the inherent power to correct such mistakes. *Commonwealth v. Cole,* 437 Pa. 288, 263 A.2d 339 (1970); *Commonwealth v. Rusic,* 229 Pa. 587, 591, 79 A. 140 (1911). Moreover, this power includes the power to correct mistakes affecting jurisdiction where the mistake is a result of a breakdown in the court's operations. *Commonwealth v. Horner,* 449 Pa. 322, 296 A.2d 760 (1972); *Luckenbach v. Luckenbach,* 443 Pa. 417, 281 A.2d 169 (1971); *Commonwealth v. Bey,* 437 Pa. 134, 262 A.2d 144 (1970). And see *Purdy Estate,* 447 Pa. 439, 291 A.2d 93 (1972); *Smith v. Hood & Co.,* 25 Pa. 218 (1855).

Court[3] and his post-trial brief in the Court of Common Pleas[4] specifically argued that the failure of the trial judge to communicate directly with the jury rendered the jury's discharge constitutionally impermissible and hence resulted in a bar to any subsequent prosecution.

The Commonwealth also claims Bartolomucci has waived any claim of double jeopardy because under *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974), defense counsel was required not only to object to the discharge of the jury in the first trial, which he did, but to state the specific grounds of objection. The Commonwealth further argues, since defense counsel's objection, although specific, related to additional instructions and deliberation and not to a need for the trial judge to communicate directly with the jury with regard to the deadlock, Bartolomucci waived any right to now complain of the trial judge's failure to communicate directly with the jury before declaring the mistrial.

■ *Commonwealth v. Clair,* supra, requires specific objection to rulings and conduct of the trial judge, *Commonwealth v. Carr*, 459 Pa. 262, 328 A.2d 512 (1974), as well as to conduct of the prosecuting attorney, *Commonwealth v. Davenport*, 462 Pa. 555, 342 A.2d 67 (1975), in order to permit a challenge thereto on appeal. Furthermore, we recognize that the ruling in *Clair* was designed, inter alia, to give the trial court an opportunity to correct errors before the trial concludes. *Commonwealth v.*

3.  Bartolomucci's brief in the Superior Court states:
    "There was certainly no manifest necessity and the realistic justification can certainly not be found in a simple declaration of the Foreman to the tipstaff that they were 'hopelessly deadlocked' *without the court making a determination of this statement.*" [Emphasis added.]

4.  Bartolomucci's brief in the Court of Common Pleas makes precisely the same statement quoted in n. 3, supra, and additionally it states:
    "Here we think the court discharged the jury *without making any inquiry concerning their position* . . . ." [Emphasis added.]

*Clair,* supra, 458 Pa. at 422, 326 A.2d at 274. We also recognize that, if defense counsel here had alerted the trial judge to the fact he was objecting to the discharge of the jury without some direct inquiry by the court as to the failure of the jury to agree, the trial judge would then have had the opportunity to correct this omission. Nevertheless, we are unwilling to rule that, where, as here, the trial court *sua sponte* and over the objection of the defendant declares a mistrial, the defendant is precluded from challenging the propriety of the mistrial unless he specifies precisely and correctly the reason why the mistrial is not proper. To apply the rule of *Clair* to this situation is to invite a serious conflict with the substantive law of double jeopardy.

■■ As stated by the Supreme Court of the United States in *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976):

> "Since Justice Story's 1824 opinion . . . in *United States v. Perez,* 9 Wheat. 579, 580, 6 L.Ed. 165, this Court has held that the question whether under the Double Jeopardy Clause there can be a new trial after a mistrial has been declared *without the defendant's request or consent* depends on whether 'there is a manifest necessity for the [mistrial], or the ends of public justice would otherwise be defeated.' " [Emphasis added.]

Thus the substantive law of double jeopardy requires either a request or consent by a defendant to the mistrial in order to avoid the requirement that the mistrial be manifestly necessary. A mere failure to state the reason for an objection or to make a correct specific objection cannot be viewed as a request for or consent to the mistrial. *Commonwealth v. Baker,* 413 Pa. 105, 196 A.2d 382 (1964). And while we recognize that the Commonwealth does not argue this failure is a request for or consent to the mistrial, but rather argues it constitutes a

waiver whereby the question of whether manifest necessity is or is not applicable is not reached, the effect of ruling the failure constitutes a waiver is the same as ruling it constitutes a request or consent. Thus, while conceptually no conflict between our *Clair* rule and the substantive law of double jeopardy would result from adopting the Commonwealth's position, functionally, that is, in effect, the conflict would exist. Therefore, we reject the Commonwealth's position and hold that absent a request for or consent by a defendant to a mistrial, the *sua sponte* declaration of a mistrial must be manifestly necessary regardless of *Commonwealth v. Clair*, supra. In accord, *Commonwealth v. Fredericks*, 235 Pa.Super. 78, 340 A.2d 498 (1975).

■ Our determination is supported by other considerations. "[T]he *Perez* doctrine of manifest necessity stands as a *command* to trial judges not to" declare a mistrial absent manifest necessity. *United States v. Jorn*, 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971) (plurality opinion but quoted with approval numerous times by a majority of the Supreme Court of the United States; e. g., *United States v. Dinitz*, supra, 424 U.S. at 607, 96 S.Ct. at 1080). [Emphasis added.] Thus, unlike the vast majority of situations wherein *Clair's* requirements are strictly enforced, in the instant circumstance, the Constitution of the United States prohibits a *sua sponte* declaration of a mistrial absent manifest necessity. Further, the Supreme Court of the United States, albeit in a more limited context, has stated that waiver concepts have little relevance in the context of double jeopardy. *United States v. Dinitz*, supra, 424 U.S. at 608, 96 S.Ct. at 1081. Moreover, in *Commonwealth v. Robson*, 461 Pa. 615, 337 A.2d 573 (1975), cert. denied 423 U.S. 934, 96 S.Ct. 290, 46 L.Ed.2d 265, although not confronting the present *Clair* argument, this Court ruled that informing the trial court of opposition to a mistrial was sufficient to put the trial judge on no-

tice that no request for or consent by the defendant or his counsel was present. Finally, in *Commonwealth v. Baker,* supra at 115, 196 A.2d at 387, albeit prior to *Clair,* this Court stated:

"  .  .  .  mere silence by [a] defendant or his counsel to the proposed discharge of the jury by the trial Judge will not amount to a waiver of this very important constitutional right of every person  .  .  .."

*A fortiori,* the lack of a correct specific objection should not be viewed as consent or a request, nor should it be considered as the functional equivalent of these, that is, a waiver. Cf. *United States v. Dinitz,* supra; *Commonwealth v. Wideman,* 453 Pa. 119, 306 A.2d 894 (1973); *People v. Johnson,* 396 Mich. 424, 240 N.W.2d 729, 19 Cr.L. 2152, 2153 (1976); 63 A.L.R.2d 782, § 5 (indicating a majority of jurisdictions do not view silence as consent).

Since we have concluded the lack of objection, or the lack of a correct specific objection instantly, does not constitute a waiver of a claim that the mistrial was not manifestly necessary, it is necessary to consider whether the *sua sponte* declaration of a mistrial was manifestly necessary. *United States v. Perez,* supra; *Commonwealth ex rel. Walton v. Aytch,* 466 Pa. 172, 352 A.2d 4 (1976); *Commonwealth v. Robson,* supra; *Commonwealth v. Shaffer,* 447 Pa. 91, 288 A.2d 727 (1972); *Commonwealth v. Ferguson,* 446 Pa. 24, 285 A.2d 189 (1971). In making this inquiry " '  .  .  .  the pivotal question  .  .  .  [is] whether the trial court properly exercised its discretion in finding  .  .  .  manifest necessity.' " *Commonwealth ex rel. Walton v. Aytch,* supra at 180, 352 A.2d at 8, quoting from *Commonwealth v. Stewart,* supra at 451–52, 317 A.2d at 618. But any doubt regarding the propriety of the exercise of discretion and thus about the necessity for the mistrial must be resolved in favor of the accused. *Commonwealth ex rel.*

*Walton v. Aytch,* supra; *Commonwealth v. Shaffer,* supra.

In examining the circumstances to determine if doubt exists, the courts have focused on certain significant factors. *United States v. See,* 505 F.2d 845, 851 (9th Cir. 1974), cert. denied 420 U.S. 992, 95 S.Ct. 1428, 43 L.Ed.2d 673. And see, e. g., *Commonwealth ex rel. Walton v. Aytch,* supra, which focused on the failure of the trial court to attempt to contact counsel. A significant factor instantly is the failure of the trial court to inquire directly of the jury about the "hopeless deadlock." Moreover, we believe this failure made the necessity of the mistrial not manifest and thus open to doubt.

The doubt stems from the trial court's failure to inquire directly of the jury, either individually or through the foreman, about the possibility of the deadlock being overcome by further deliberations. Such an inquiry would have served to remove any doubt, and thus, would have provided greater certainty as to the existence of a deadlock and the hopelessness of breaking it. If an individual inquiry were made, the trial court would have then had the opinion of each juror as to the existence and hopelessness of the deadlock. *United States ex rel. Webb v. Court of Common Pleas,* 516 F.2d 1034, 1043–44 (3d Cir. 1975); *United States v. See,* supra. If the inquiry were made of the foreman in the presence of the remainder of the jury, the trial court would have then had the benefit of the reactions and possible unsolicited remarks of the other jurors when the foreman informed the court of the deadlock and its hopelessness.[5] *United*

5. We note that preferable practice demands that the trial court first caution the jury that only a yes or no response is desired and then ask each juror if he or she agrees that a hopeless deadlock which could not be resolved by further deliberations exists. In accord, *State v. Nelson,* supra; *Paulson v. Superior Court of El Dorado County,* supra. And see, *United States ex rel. Webb v. Court of Common Pleas,* supra; *United States v. See,* supra. But in doing so, we express no view on whether a direct inquiry solely of the foreman in the presence of the rest of the jurors would

*States ex rel. Webb v. Court of Common Pleas,* supra; *United States v. See,* supra; *United States v. Lansdown,* 460 F.2d 164 (4th Cir. 1972); *State v. Nelson,* Iowa, 234 N.W.2d 368 (1975); *Paulson v. Superior Court of El Dorado County,* 58 Cal.2d 1, 22 Cal.Rptr. 649, 372 P.2d 641 (1962). Thus, since doubt exists and since all doubt must be resolved in favor of an accused, we rule the mistrial was not manifestly necessary and will therefore affirm the order of the Superior Court reversing the judgment of sentence.

It is so ordered.

MANDERINO, J., joined in this opinion and filed a concurring opinion.

POMEROY, J., filed a dissenting opinion.

NIX, J., filed a dissenting opinion.

MANDERINO, Justice (concurring).

I join in the majority opinion by Mr. Justice Eagen. I should like to add that the issue of double jeopardy is similar to an issue of subject matter jurisdiction. It may be raised at any time, even initially on appeal. Constitutionally, no court has jurisdiction to try or sentence a person twice, in violation of the Federal and Pennsylvania Constitutions. *See Commonwealth v. Walker,* 468 Pa. 323, 362 A.2d 227 (1976) (filed June 6, 1976).

NIX, Justice (dissenting).

I am unable to agree with the result reached by the majority and am disturbed by its reasoning in two respects. Therefore, I must dissent.

result in a bar to further prosecution. But see *United States v. See,* supra, and *State v. Nelson,* supra, suggesting such a situation would not result in a bar. And see, *United States ex rel. Webb v. Court of Common Pleas,* supra, at 1044, n. 56, where the Court of Appeals for the Third Circuit indicated that a poll of the jury is less necessary where the jury informs the court of the existence of a deadlock rather than where the court assumes one exists because of the length of time the jury has deliberated.

First, the majority appears to suggest that since a claim of double jeopardy is a constitutional claim it is not one that may be considered waived in accordance with our decision in *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974).[1] To begin with the majority seemingly ignores our decision in *Commonwealth v. Bryant*, 461 Pa. 309, 313, 336 A.2d 300, 302 (1975), wherein we ruled that the appellant had waived his claim that his " . . . trial was held in violation of constitutional provisions against double jeopardy because a previous trial had resulted in a hung jury," because he failed to raise it in post-verdict motions. Furthermore, the implicit suggestion in the majority's opinion that constitutional claims might be an exception to our waiver doctrine as articulated in *Commonwealth v. Clair*, supra, is in direct opposition to numerous decisions of this Court in which we have refused to consider constitutional claims because they were waived at some stage of the criminal process. See, e. g., *Commonwealth v. Carter*, 463 Pa. 310, 315 n. 7, 344 A.2d 846, 849 n. 7 (1975) (waiver of an alleged right to a jury trial) ; *Commonwealth v. Davenport*, 462 Pa. 543, 559, 342 A.2d 67, 75 (1975) (waiver of an alleged right to challenge evidence seized in violation of defendant's constitutional rights) (Eagen, J.); *Commonwealth v. Stoltzfus*, 462 Pa. 43, 57 n. 7, 337 A.2d 873, 880 n. 7 (1975) (waiver of an alleged right to confront witness, U.S.Const. amend. VI, Pa.Const. art. I, § 9, P.S.) (Eagen, J.); *Commonwealth v. Bryant*, supra (waiver of an alleged double jeopardy claim, U.S.Const. amend. V, Pa.Const. art. I, § 9, supra); *Commonwealth v. Tressler*, 461 Pa. 240, 241, 336 A.2d 265, 266 (1975) (waiver of alleged violation of *Miranda* rights) ; *Commonwealth v. Goosby*, 461 Pa. 229, 231, 336 A.2d 260, 261 (1975) (waiver of an alleged unconstitutional confession, U.S.

---

1. The majority states, "To apply the rule of *Clair* to this situation is to invite a serious conflict with the substantive law of double jeopardy," and " . . . the *sua sponte* declaration of a mistrial must be manifestly necessary regardless of *Commonwealth v. Clair, supra*."

Const. amend. IV, Pa.Const. art. I, § 9, supra); *Commonwealth v. Jones*, 460 Pa. 713, 714, 334 A.2d 601, 602 (1975) (waiver of alleged unconstitutional confession); *Commonwealth v. Sistrunk*, 460 Pa. 655, 658, 334 A.2d 280, 282 (1975) (waiver of challenge to jury on grounds of exclusion of Blacks and those opposed to the death penalty, U.S.Const. amend. XIV); *Commonwealth v. Murray*, 460 Pa. 605, 607 n. 1, 334 A.2d 255, 256 n. 1 (1975) (waiver of challenge to confession on constitutional grounds); *Commonwealth v. Piper*, 458 Pa. 307, 310 n. 5, 328 A.2d 845, 847 n. 5 (1974) (waiver of an alleged equal protection claim); *Commonwealth v. Powell*, 459 Pa. 253, 261, 328 A.2d 507, 511 (1974) (waiver of an alleged right to compulsory process to attain witnesses, U.S.Const. amend. VI; Pa.Const. art. I, § 9, supra); *Commonwealth v. Roundtree*, 458 Pa. 351, 326 A.2d 285 (1974) (waiver of an alleged speedy trial claim, U.S. Const. amend. VI and XIV; Pa.Const. art. I, § 9, supra).

Moreover, I cannot see any reason to make an exception to our waiver doctrine. The reasons which supported our decision to adopt it as articulated in *Clair* are sound and as we noted there, a defendant's recourse is an ineffective assistance of counsel claim, "[O]ur standard for effective assistance of counsel is a meaningful test and not simply a fictional standard which does no more than allow appellate courts the opportunity to select those alleged errors they may wish to review." *Commonwealth v. Clair*, supra, 458 Pa. at 422, 326 A.2d at 274. Thus, I see no reason in precedent or policy to deviate from a strict application of our waiver doctrine even though constitutional claims may be involved.

Second, I believe the majority's waiver analysis is faulty. According to the Agreed Statement of Facts submitted to us pursuant to Supreme Court Rule 45, the following transpired at appellant's first trial:

"THE COURT: Mr. Rodgers, what is your position concerning the question of whether or not they should be discharged?

MR. RODGERS [Defense Counsel]: *I would request that they be called in for instructions.*

THE COURT: What instructions would you propose that we give them?

MR. RODGERS: Well, *I think that they should be given a review of their responsibilities to consider each other's positions, the right to each of them to retain their won [sic] position if they cannot consciously change it . . .*

THE COURT: Well, what you're suggesting is that which we have done before in the Charge." (Emphasis added).

It is therefore clear that when questioned by the court, defense counsel specifically set forth his reasons for not agreeing to the decision to discharge the jury. Under these circumstances it is obviously not a question of waiver since we no longer require the former practice of requesting an exception when the court rules adversely to the party's position. *Commonwealth v. Williams,* 463 Pa. 370, 373 n. 1, 344 A.2d 877, 879 n. 1 (1975); Pennsylvania Rule of Criminal Procedure 1115. Furthermore, it is a fundamental principle of the law of evidence that where there has been a specific basis set forth by a party, the court's adverse ruling is to be tested only in light of those reasons given and all other possible grounds for objection are to be ignored. See, e. g., *Commonwealth v. Mitchell,* 464 Pa. 117, 346 A.2d 48 (1975); *Commonwealth v. Stoltzfus,* 462 Pa. 55, 337 A.2d 873, 881 (1975) (Eagen, J.); *Commonwealth v. McNeal,* 456 Pa. 394, 398, 319 A.2d 669 (1974) (Eagen, J.); *Commonwealth v. Budd,* 443 Pa. 193, 278 A.2d 879 (1971); *Commonwealth v. Raymond,* 412 Pa. 194, 194 A.2d 150 (1963). We have applied this same rule in civil cases. See, e. g., *Altman v. Ryan,* 435 Pa. 401, 406–407, 257 A. 2d 583, 585 (1969); *Abrams Will,* 419 Pa. 92, 98, 213 A. 2d 638, 641 (1965); *Fisher v. Brick,* 358 Pa. 260, 264, 56

A.2d 213, 215 (1948); 1 Wigmore, Evidence § 18(B)(2) at 339–340 (3rd Ed. 1940).

Thus, the only issue before us is the propriety of the court's ruling in view of the objection raised by Mr. Rodgers on behalf of appellant. Viewing the ruling in this context, I do not believe that the court erred. First, the *Allen* charge, which was in effect that which was being requested has been condemned both by this Court, *Commonwealth v. Spencer*, 442 Pa. 328, 336–337, 275 A. 2d 299, 303–304 (1971), and the Third Circuit, *United States v. Fioravanti*, 412 F.2d 407 (3rd Cir. 1969). Secondly, we have cautioned against courts giving additional instructions where a request for such instructions was not made by the jury. Thirdly, my reading of the record satisfies me that the information requested by defense counsel had already been given to the jury in the basic charge.

I would therefore affirm the judgment of sentence.

POMEROY, Justice (dissenting).

In *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974), our Court, over the dissent of this writer,[1] discarded the "basic and fundamental error" exception to the long-standing rule that errors not objected to at trial would not be reviewed on appeal. Thus since *Clair* our policy of refusing to review errors of even constitutional dimension when objections to the errors were not properly raised in the proceedings below has been pursued without exception.[2] Today, the Court departs from this unwavering and generally desirable course. Because of a perceived conflict between the rule of *Clair* and the

1. See *Commonwealth v. Clair*, 458 Pa. 418, 422, 326 A.2d 272, 274 (1974) (dissenting opinion of Pomeroy, J., joined by Eagen and O'Brien, JJ.)

2. See, *e. g., In re Mortorano*, 464 Pa. 66, 346 A.2d 22 (1975) (due process); *Commonwealth v. Bryant*, 461 Pa. 309, 336 A.2d 300 (1975) (illegal arrest and double jeopardy); *Commonwealth v. Jones*, 460 Pa. 713, 334 A.2d 601 (1975); *Commonwealth v. Roundtree*, 458 Pa. 351, 326 A.2d 258 (1974) (speedy trial).

substantive law of double jeopardy, the majority con-
cludes that we may overlook appellee's failure to object
to an alleged error which is the basis of his appeal,[3] and

**3.** Before deciding to discharge the jury, the judge engaged in the
following in-chambers colloquy with defense counsel:

"THE COURT: Mr. Rodgers, [defense counsel] what is your po-
sition concerning the question of whether or not they should be
discharged?

"MR. RODGERS: I would request that they be called in for in-
structions.

"THE COURT: What instructions would you propose that we
give them?

"MR. RODGERS: Well, I think that they should be given a re-
view of their responsibilities to consider each other's positions,
the right to each of them to retain their won [sic] position if
they cannot consciously change it . . .

"THE COURT: Well, what you're suggesting is that which we
have done before in the Charge. . . . I'm of the opin-
ion that nothing concrete or constructive can be accomplished
by keeping this jury out any further, nor do I believe that
merely repeating to them what we told them initially in the
Charge is going to change their position. As we know, the Al-
len Charge or so-called dynamite charge has been specifically
frowned upon, and trial Courts have been specifically instruct-
ed in Pennsylvania both by the Third Circuit and by the Su-
preme Court of Pennsylvania, it can no longer be used even
though the United States Supreme Court itself has never had
occasion to reverse the Allen Charge; that takes the Allen
Charge away from the trial courts, and without the Allen
Charge or modification of it, I have serious question as to the
effect of merely repeating to the jury what they have already
been told, and so we are going to elect to declare a mistrial
and call the jury in and inform them that there is a mistrial.

"After the second conference in chambers, Trial Judge Acker
went into the courtroom and discharged the jury at 10:55 p. m.

"The appellee and his attorney, although in court at the time,
did not request that the jury be polled as to its inability to
reach a verdict." See Agreed Statement of parties filed pursu-
ant to Rule 45 of the Rules of the Supreme Court of Pennsyl-
vania at pp. 8a–11a.

It is clear that defense counsel never objected to the discharge of
the jury on the theory that it had not first been polled. More-
over, even if it be assumed that the above-quoted exchange suffi-
ciently states an objection to the judge's contemplated discharge
of the jury without allowing further deliberation on a requested
supplemental charge, such an objection would not suffice to pre-
serve the "failure to poll" theory which was not timely asserted
when the jury was actually discharged. See *Commonwealth v.
Mitchell,* 464 Pa. 117, 346 A.2d 48 (1975).

reach the merits of his double jeopardy contention. While I welcome a move in the direction of modifying the rigid constraints which *Clair* has imposed on our ability to review errors of a basic and fundamental nature, i. e., such as to deprive a defendant of a fair trial, this is not, in my view, the case in which to make that move. Because I believe that *Clair* compels the conclusion that appellee's double jeopardy claim is not properly before us, I respectfully dissent.[4]

The majority concludes that the rule of *Clair* may not be applied because its application would "invite a serious conflict with the substantive law of double jeopardy." Opinion of the Court *ante* at 346, 362 A.2d at 238. I fail to discern this conflict. *Clair* is a procedural rule which dictates that the basic and fundamental nature of an alleged error of a lower court will not serve to preserve claims of error which have not previously been asserted in a timely fashion. The substantive law of double jeopardy, on the other hand, guides our consideration of those claims which have been properly preserved for appellate review. The only tension which may be said to exist between the two is that the potentially basic and fundamental nature of a double jeopardy violation will not preserve an allegation of error not timely raised in the proceedings below. This "tension", however, has existed in all allegations of constitutional error which we have heretofore refused to review.[5] As there is, in my mind, nothing about a double jeopardy claim which could serve to distinguish it from these other allegations of constitutional error, I can find no satisfactory basis upon which to spare a "manifest necessity" allegation from

4. Because, in my view, the claim is not properly before us, I intimate no opinion on the merits of appellant's contention.

5. See cases cited note 2 *supra*. A recent United States Supreme Court decision suggests that this tension does not pose constitutional problems. See *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976).

the dictates of *Clair*.[6] Absent such a basis I feel constrained to adhere to *Clair*, for to depart from its teaching without meaningful guidelines can only serve to cast our appellate processes into a state of unavoidable uncertainty. Accordingly I would hold that Mr. Bartolomucci's failure to object to the trial judge's dismissal of a deadlocked jury without first conducting a poll of the jury precludes our review of his double jeopardy claim based, as it is, on this alleged error.

6. The Majority states in the course of its analysis that "[t]he Supreme Court of the United States, albeit in a more limited context, has stated that waiver concepts have little relevance in the context of double jeopardy. *United States v. Dinitz, supra* at 609, 96 S.Ct. at 1081." Opinion of the court *ante* at 346, 362 A.2d at 238. With respect, I submit that this statement is misleading. In *Dinitz*, appellant contended that he was compelled to move for a mistrial because of egregious conduct on the part of the court. When a defendant is so compelled, appellant argued, he cannot be said to have knowingly and intelligently waived his constitutional right not to be twice placed in jeopardy. In response to this argument, the Court declared that a defendant's request for a mistrial is not conceptually the same as a waiver of his double jeopardy protection and that in this context waiver concepts have litle relevance to double jeopardy. In *Dinitz* the Court was addressing the concept of waiver in the sense of a knowing and intelligent waiver of a constitutional right, see *Johnson v. Zerbst*, 394 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), not in the sense of a failure to preserve an issue for appeal. The United States Supreme Court has subsequently made it clear that these two usages of the term "waiver" are discrete and that a waiver of an issue in the latter sense need not meet the *Zerbst* standards. *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976) [44 U.S.L.W. 4609, 1976].