J-A05019-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RONALD L. AKES | |
| Appellant | No. 1121 EDA 2015 |

Appeal from the Judgment of Sentence December 19, 2014
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0001777-2014

BEFORE:  OLSON, J., OTT, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OTT, J.:                    **FILED JULY 26, 2016**

Ronald L. Akes appeals from the judgment of sentence imposed December 19, 2014, in the Delaware County Court of Common Pleas.  The trial court sentenced Akes to an aggregate term of 72 to 144 months' imprisonment, plus three years of probation, made final by the denial of post-sentence motions on March 3, 2015.  On November 7, 2014, a jury convicted Akes of possession with intent to deliver, possession of drug paraphernalia, and providing false identification to a police officer.[1]  On

_____

[*] Former Justice specially assigned to the Superior Court.

[1] **See** 35 P.S. §§ 780-113(a)(30) and (a)(32), and 18 Pa.C.S. § 4914(a), respectively.

appeal, Akes raises various suppression, evidentiary, and jury instruction challenges. For the reasons set forth below, we affirm.

The trial court set forth the facts and procedural history as follows:

Officer Brian Jefferson is a patrolman with the Darby Borough Police Department and has been so employed for two and a half years. Within that time, Officer Jefferson has conducted over 1,000 traffic stops. On the evening of February 12, 2014, at approximately 8:30 p.m., Officer Jefferson was on routine patrol in the area of Main Street and MacDade Boulevard in Darby Borough, Delaware County. Officer Jefferson was in full uniform and patrolling in a marked police vehicle.

Officer Jefferson observed a minivan traveling northbound on MacDade Boulevard. Officer Jefferson witnessed the van change from the left turn lane into the straight lane without a turn signal, cutting off another vehicle. Officer Jefferson turned on his lights and stopped the vehicle within the 200 block of MacDade Boulevard, approximately a block down from where he witnessed the violation. At this point, Officer Jefferson had his overhead lights, and a spotlight on, as well as takedown lights, which are two white lights that better illuminate the vehicle for officer safety. He could see that there were three occupants in the vehicle.

Officer Jefferson approached the vehicle and spoke with the driver, herein [Akes].[1] Although some people act nervously when pulled over, [Akes] was nervous beyond the threshold of the "normal nervousness" Officer Jefferson typically sees. [Akes'] hands were trembling violently and he was sweating despite it being snowy out. Officer Jefferson advised [Akes] why he stopped and asked for his license, registration, and insurance. As [Akes] was reaching into his glove box, a light came on within the glove box, and Officer Jefferson could see an orange pill container with no label containing multiple white pills.

[1] The other occupants in the vehicle were identified as Bernard Debose and Andre Brand.

Officer Jefferson asked [Akes] to hand him the unlabeled pill bottle; however, [Akes] handed him two other pill bottles from the glove box, one orange and another white that were not

- 2 -

in Officer Jefferson's view. The orange pill bottle was prescribed to an Erica Simmons for oxycodone, quantity of 120. The white pill bottle was also prescribed to Erica Simmons for amoxicillin in the quantity of 30. [Akes] gave Off[ic]er Jefferson a prescription that he took out from the center console and stated that he picked the pills up from Wal-Mart that evening. Officer Jefferson once again asked for the pill bottle he originally saw and [Akes] handed over the unlabeled orange pill bottle.[2, 3]

[2] At the station, officers located a pill bottle[] prescribed to Andre Brand in Mr. Debose's shoe. Andre Brand had a sole pill in his possession.

[3] The pills were later submitted to the Pennsylvania State Police Bureau of Forensic Services, Lima Regional Laboratory and were confirmed to be oxycodone, a schedule II narcotic.

When Officer Jefferson told [Akes] he was the subject of an official investigation and asked for his name, [Akes] replied "Ronald Premier" and gave an address in Maryland but a zip code in New Jersey. Officer Jefferson went back to his vehicle and tried to confirm [Akes'] identity; however, it yielded no result, which mean[t] he d[id] not have [an] ID in the state or he lied.

Officer Jefferson went back to speak to [Akes] and advised him that he was under arrest for drugs and for lying about his name. When asked if there was anything in the vehicle that Officer Jefferson should know about, [Akes] said, "no, you can check it." In the rear, right side passenger seat, Officer Jefferson located a black notebook that contained "tally marks as if it were a drug ledger." Officer Jefferson also found three Pennsylvania ID's and insurance information for Erica Simmons, Valerie Sadler, and Lorraine Fielding. Officer Jefferson also took [Akes]'s cell phone that he was holding as well as $113 dollars that he had on his person. After the stop, Officer Jefferson placed all of the evidence into the evidence locker.

[Akes] was arrested and charged with Possession with Intent to Deliver, Possession of a Controlled Substance, Possession of Drug Paraphernalia, and False Identification to Law Enforcement.

…

On July 2, 2014, [Akes] filed a motion to suppress as well as a motion for severance. Th[e trial c]ourt heard argument on the motion for severance and denied it because the issues raised by counsel could have been adequately addressed by cautionary instructions to the jury at the time of trial. In addition, prior to trial, both Bernard Debose and Andre Brand entered guilty pleas, leaving only [Akes] left to stand trial, thereby effectively reaching the very outcome sought by [Akes].

With regard to the suppression motion, th[e trial c]ourt had to reschedule the motion two separate times because counsel for [Akes] was not fully prepared to proceed on the scheduled days. On October 1, 2014, counsel had mistakenly not subpoenaed the owner of the vehicle, Mr. Quran H. Lockett, to appear at the hearing. Counsel asked for a continuance to subpoena Mr. Lockett. This Court granted the continuance and rescheduled the suppression hearing for October 24, 2014.

On October 24, 2014, [Akes] attempted to call Mr. Lockett to establish standing; however, counsel for [Akes] did not advise Mr Lockett prior to the hearing that he had the right to obtain the advice of counsel. Th[e trial c]ourt had to continue the suppression hearing until October 31, 2014, so that the witness could obtain counsel if he desired.

On October 31, 2014, Mr. Lockett opted not to testify, and, as such [Akes] could not establish standing.[2] Therefore, th[e trial c]ourt properly denied the motion.

On November 5, 2014, th[e trial c]ourt addressed [Akes'] Motion to Preclude Evidence and the Commonwealth's Notice of Intention to Introduce Evidence of Other Crimes, Wrongs, or Acts Under [Pa.R.E.] 404(b). Th[e trial c]ourt granted the majority of [Akes'] motion with the exception of eleven (11) text messages. Th[e trial c]ourt granted the Commonwealth[']s [Rule] 404(b) motion allowing text message numbers 2371, 2374, 2375, 2380, and 2381. A jury was then selected;

---

[2] As will be later discussed, we note that it was scrivener's error to state that Akes could not establish standing. **See** Footnote 6, **infra**.

however, due to clerical error, the jury was dismissed and a new jury was selected on November 6, 2014.

At trial, the Commonwealth presented the testimony of Officer Jefferson, who testified to the facts mentioned above.

The Commonwealth then presented Detective Corey Cooper who is employed with the Borough of Darby Police Department and has been so employed for the past two years. Prior to being a detective, he was a patrolman in Darby Borough as well as Darby Township. In his capacity as a detective, Detective Cooper has executed at least fifty search warrants on cellular devices. Detective Cooper prepared and executed a search warrant for [Akes'] Samsung Note 3 that Officer Jefferson seized at the time of [Akes'] arrest. Following the standard procedure for extracting data from a cellular device, Detective Cooper was able to retrieve the contents of the phone and download it onto a compact disc.

As a result from the search, Detective Cooper observed several text messages, the following were outgoing messages that [Akes] sent on the day he was arrested:

Outgoing message #2463 sent on February 12, 2014, @ 2:16 p.m.: "nobody called for no p's."

Outgoing message #2464 sent on February 12, 2014, @ 2:17 p.m.: "blues on deck."

Outgoing message #2466 sent on February 12, 2014, @ 2:19 p.m.: "Remember I need all the money to be right. Did you sell the four?"

Outgoing message #2496 sent on February 12, 2014, @ 8:47 p.m.: "The police just pulled me over. I told them my name is Ronald Premier Lockett."

Detective Cooper also observed the following text message conversation between [Akes] and an individual named Quran which occurred on February 7, 2014 between 12:24 p.m., through 5:10 p.m.:

Outgoing message #2371: "Yo I just found out we're going out tomorrow. They want to do it today but I don't

- 5 -

have time to put anything together if you got a young girl like 25 for some zans."

Incoming message #2372: "Yea, I got a girl that's 25."

Outgoing message #2373: "ask her if she got insurance and Id that will be for some zans."

Outgoing message #2374: "And if she can be ready early tomorrow."

Incoming message #2375: "All right."

Incoming message #2380: "The Joan I got, she want to know too much."

Outgoing message #2381: "That's up to you.[] You have to decide. She only going to get z's, maybe some 512 or the cheap percs. You gotta figure out what you're going to make and pay the people that grab for you. I only pay 25 for z and 50 for p unless they your people and then you got to look out."

In addition, the Commonwealth also presented testimony from Lieutenant Michael Boudw[]in, who is currently employed with the Delaware County Criminal Investigation Division, Narcotics Unit and has been so employed for the last thirty years. Lieutenant Boudwin was offered and accepted as an expert in the field of illegal drugs, drug distribution, drug investigations, and drug jargon. After viewing the evidence in [Akes'] case, Lieutenant Boudwin determined the pills were possessed with the intent to deliver. Lieutenant Boudwin testified that the amount of pills, the notes in the notebook, and the text message[s] were all indicative of selling and not possessing for mere personal use. Contained within the notebook, was a list of different medications and a list of doctors from where they were getting the medications. Coupled with the text in reference to finding a female to go to the doctor's office, Lieutenant Boudwin described the following situation: "They're basically just pill mills. We send undercovers in; we make buys off them. Word gets out in the community, user community, so when you see doctors written down, and by the text messages they're recruiting people that fit the profile to go into the doctors to shop for the pills. You go in to get the pills, if you're using an

insurance card; it costs nothing except a $2 copay. You come out with the zannies or Xanax or alprazolam is the legal name of the medication, and the [P]erco[c]ets or the oxycodone, and you come out and you sell them for a large profit margin." In reference to the text messages, Lieutenant Boudwin pointed out the "p's" means Percocet and "bls on deck" means Xanax and that the rest of the text messages were all indicative of selling drugs.

The defense presented testimony from [Akes]. [Akes] testified that on the evening of February 12, 2014, at approximately 8:30 p.m., he was driving Andre Brand to get groceries and Bernard Debose to go shopping. [Akes] testified that he does this because it's how he makes some extra money and described it as being a taxi hack. When he was pulled over by Officer Jefferson, [Akes] stated that he told Officer Jefferson his name was Ronald Akes and that Officer Jefferson kept asking him "what's going on, where's the weed?[" Akes] said his glove compartment was broken at the time and that it lacked an interior light and that Debose knocked two pill bottles out of the glove box and that's when Officer Jefferson asked to see them. [Akes] testified that he borrowed the vehicle and that up until that point, he had never seen the pill bottles before; it was a shock to him that they were in the vehicle. In addition, [Akes] testified that the name Valerie Sadler was wholly unfamiliar to him. [Akes] also testified that he didn't have any cell phones on him, rather all the phones were in between the two seats.

After deliberating, [Akes] was found guilty of Possession with Intent to Deliver: Oxycodone, Possession of Drug Paraphernalia, and False Identification to Law Enforcement.[10]

[10] The Commonwealth did not go forward on the lesser included offense, Possession of a Controlled Substance and counsel for [Akes] opted not to send it to the jury.

On December 19, 2014, th[e trial c]ourt sentenced [Akes] as follows: Count 1: 72 months to 144 months in SCI with one year consecutive state probation; Count 3: 1 year probation consecutive to Count 1; Count 4: one year state probation consecutive to Count 1 and Count 3.

On December 27, 2014, counsel for [Akes] filed a post-sentence motion. Th[e trial c]ourt scheduled a hearing date of

January 13, 2015; however, [Akes] was unavailable due to a prison transfer. On February 3, 2015, th[e trial c]ourt held a hearing and denied the motion via order on March 3, 2015, which was served on March 4, 2015, and sent to counsel as evidenced by the docket.

Trial Court Opinion, 5/27/2015, at 1-8 (record citations and some footnotes omitted). This timely appeal followed.[3]

In Akes' first argument, he asserts his constitutional rights were violated because the trial court erred in (1) denying his motion to suppress for lack of standing and (2) granting the Commonwealth's motion to introduce evidence of crimes, wrongs, and other acts under Pa.R.E. 404(b) without allowing him to challenge the telephonic records authorship and authentication. *See* Akes' Brief at 11-12.

With respect to Akes' standing contention, he states the court incorrectly found he lacked standing to challenge the search and seizure and that as a result, he was denied the opportunity to introduce evidence that he had a privacy interest in the car. *Id.* at 14. He points to the following:

At [Akes'] preliminary hearing on October 31, 2014, the vehicle [Akes] was arrested operating, owner, was Quran Akes-Lockett was called to testify as to the car's usage permissions. Before testifying Mr. Lockett spoke with investigator Christopher Lah[m]eman, about who had permission to utilize it. On September 8, 2014, Mr. Lockett told Mr. Lah[m]eman, and provided a signed statement, "I Quran Lockett of 1113 South

---

[3] On April 14, 2015, the trial court ordered Akes to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Akes complied with the court's directive, and filed a concise statement on May 4, 2015.

53rd Street, I swear and affirm my father Ronald Akes and I purchased the 2002 Oldsmobile Silhoutte [sic], and I placed the vehicle in my name as a favor for him. The vehicle was in my name but it was for his use." [Akes] subpoenaed Mr. Lockett to appear and testify before the trial court for proceedings on October 24, 2014 and October 31, 2014.

Mr. Lockett on October 31, 2014, asserted his Fifth Amendment privilege against self-incrimination and declined to testify about the car's ownership or who had permission to operate it. Mr. Lockett was unavailable to testify at [Akes'] trial as the court determined a privilege applied. Pa.R.E. 804(a)(1). When [Akes] sought to have Mr. Lah[m]eman testify and introduce signed documents by Mr. Lockett describing the vehicle's ownership and usage permissions, as a statement against interest hearsay exception, the trial court denied [Akes'] request and reasoned Mr. Lah[m]eman's testimony would be impermissible hearsay. The suppression court utilized Mr. Lockett's privilege assertion as the reason to demonstrate [Akes] lacked standing and denied in its entirety [Akes'] motion.

*Id.* at 14-15. Akes complains the court erred in finding Lahmeman's testimony about Lockett's statements was inadmissible hearsay. *Id.* at 15.

This conflated issue deals with a mix of suppression and evidentiary issues. Accordingly, we begin with our standard of review of a denial of a motion to suppress evidence, which is as follows:

An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of

- 9 -

legal error, the suppression court's legal conclusions are not binding on the appeal court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

***Commonwealth v. Jones***, 121 A.3d 524, 526-527 (Pa. Super. 2015) (internal citation omitted), *appeal denied*, 135 A.3d 584 (Pa. 2016).

"The Fourth Amendment of the United States Constitution and Article I, Section [8] of the Pennsylvania Constitution guarantee individuals freedom from unreasonable searches and seizures." ***Commonwealth v. El***, 933 A.2d 657, 660 (Pa. Super. 2007), *aff'd*, 977 A.2d 1158 (Pa. 2009). "The concept of standing in a criminal search and seizure context empowers a defendant to assert a constitutional violation and thus seek to exclude or suppress the government's evidence pursuant to the exclusionary rules under the Fourth Amendment of the United States Constitution or Article I, Section 8 of the Pennsylvania Constitution." ***Commonwealth v. Bostick***, 958 A.2d 543, 550-551 (Pa. Super. 2008), *appeal denied*, 987 A.2d 158 (Pa. 2009). "A defendant moving to suppress evidence has the preliminary burden of establishing standing and a legitimate expectation of privacy." ***Commonwealth v. Maldonado***, 14 A.3d 907, 910 (Pa. Super. 2011). Moreover,

> [t]he traditional formulation for standing requires a defendant to demonstrate one of the following personal interests: (1) his presence on the premise at the time of the search and seizure; (2) a possessory interest in the evidence improperly seized; (3) that the offense charged includes as an essential element of the prosecution's case, the element of possession at the time of the

contested search and seizure; or (4) a proprietary or possessory interest in the searched premises.

**Bostick,** 958 A.2d at 551 (internal citation omitted). "[G]enerally under Pennsylvania law, a defendant charged with a possessory offense has automatic standing to challenge a search." **Maldonado**, 14 A.3d at 910.

> A defendant must separately establish a legitimate expectation of privacy in the area searched or thing seized. Whether defendant has a legitimate expectation of privacy is a component of the merits analysis of the suppression motion. The determination whether defendant has met this burden is made upon evaluation of the evidence presented by the Commonwealth and the defendant.
>
> With more specific reference to an automobile search, this Court has explained as follows: generally under Pennsylvania law, a defendant charged with a possessory offense has automatic standing to challenge a search. However, in order to prevail, the defendant, as a preliminary matter, must show that he had a privacy interest in the area searched.

**Commonwealth v. Burton**, 973 A.2d 428, 435 (Pa. Super. 2009) (*en banc).*[4]

---

[4] "[U]nder both our state and the federal constitutions, a defendant cannot prevail upon a suppression motion unless he demonstrates that the challenged police conduct violated his own, personal privacy interests." **Commonwealth v. Powell**, 994 A.2d 1096, 1108 (Pa. Super. 2010) (quotation omitted), *appeal denied*, 13 A.3d 477 (Pa. 2010). "The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all of the surrounding circumstances." **Commonwealth v. Caban**, 60 A.3d 120, 126 (Pa. Super. 2012), *appeal denied,* 79 A.3d 1097 (Pa. 2013).

Here, it is uncontested that the officers possessed probable cause to stop the van driven by Akes based on an observed motor vehicle violation.[5] Akes was subsequently charged with possessory offenses, and therefore, had standing to challenge the search.[6] **See Maldonado**, **supra**. As such, we must determine whether Akes has established that he has a legitimate expectation of privacy in the area searched or drugs seized. **See Burton**, **supra**.

As indicated above, Akes claims he was denied the opportunity to introduce Lockett's written statement to Investigator Lahmeman, which he claims would have established that he had a privacy interest in the vehicle. **See** Akes' Brief at 14-15. Specifically, he argues the court erred in finding the statements were inadmissible hearsay because (1) Lockett was "unavailable" pursuant to Pa.R.E. 804(a)(1); (2) his statements were "inculpatory and against his penal interests as purchasing a vehicle for an uninsured driver without properly disclosing this fact could be construed as insurance fraud among other crimes including conspiracy," **id.** at 15; and (3)

_____

[5] Akes does not challenge the initial stop or his consent to search the vehicle.

[6] We note that in its Rule 1925(a) opinion, the trial court erroneously stated Akes could not establish standing for the vehicle he was driving. Trial Court Opinion, 5/27/2015, at 10. However, it is clear this statement was a scrivener's error because in its October 31, 2014, order, the court denied Akes' motion to suppress based on the following: "[Akes] was unable to establish a **privacy interest** in the vehicle that was searched by police." Order, 10/31/2014, at 1 (emphasis added).

the statements were corroborated as Lockett made them "of his own free will, while not subject to arrest or any other adverse consequence, to a court-appointed investigator who explained to Mr. Lockett why he was being interviewed during the course of his investigation[.]"   *Id.* at 16. Furthermore, Akes asserts Lockett's statements were exculpatory to Akes' case because it demonstrated Akes "had a legitimate privacy interest in the vehicle[,]" and therefore, the drugs found in the glove compartment of the car should have been suppressed.  *Id.*

> The admissibility of evidence is within the sound discretion of the trial court, and this Court will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion.  *Commonwealth v. Flor*, 606 Pa. 384, 998 A.2d 606, 623 (Pa. 2011).  An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.  *Commonwealth v. Eichinger*, 591 Pa. 1, 915 A.2d 1122, 1140 (Pa. 2007).  To the extent that this case presents a question of law, our standard of review is *de novo*, and our scope is plenary.

*Commonwealth v. Alicia*, 92 A.3d 753, 760 (Pa. 2014).

Here, a review of the record reveals that Akes did not raise a "statement against interest" hearsay argument at the suppression hearing when he attempted to introduce Lockett's written statement to Investigator Lahmeman.  *See* N.T., 10/1/2014, at 9-10, 13.  He also did not respond when the Commonwealth objected to the statement as hearsay.  Therefore, to this extent, his argument is waived.  *See* Pa.R.A.P. 302(a) ("Issues not

- 13 -

raised in the lower court are waived and cannot be raised for the first time on appeal.").

Additionally, even if Akes had properly preserved this issue, he has not demonstrated or explained that he has a legitimate expectation of privacy in the area of the car that was searched or that the search was unreasonable. Further, nothing in the record indicated the pill bottles were exclusively in Akes' possession or that that the other occupants of the vehicle did not have common access to the bottles. Akes merely states that Lockett's statements were exculpatory because the statements established Akes had a legitimate privacy interest in the vehicle. Given the fact that Akes does not challenge his consent to the search, in which he voluntarily handed the pill bottles to the officer, we would find Akes has failed to meet his burden and the court did not err in denying his motion to suppress.

With regard to the seizure of Akes' cell phone, Akes claims he "sought to have any information obtained from the cellular phone suppressed pursuant to his Commonwealth and federal Constitutional rights to be secure in his person." Akes' Brief at 16. Akes contends, "By denying [his] motion to suppress without allowing testimony regarding the cell phone on [his] person the suppression court denied his right via Rule 581(H) to have the Commonwealth bear the burden of establishing the challenged evidence was not obtained in violation of [his] rights." *Id.* at 17. Furthermore, he states:

> [B]y denying [him] a suppression hearing regarding the phone on his person, the suppression court failed to enter onto the

record a statement of findings and conclusions of law as to whether the evidence was obtained in violation of his rights, the rules of criminal procedure, or any statute as required in Rule 581. Pa.R.C.P. 581(I).

*Id.*

Contrary to Akes' claim, a review of the record reveals that in Akes' various *omnibus* motions, he did not seek suppression of his cell phone. *See* Omnibus Pre-Trial Motion, 6/27/2014, at ¶ 53; Omnibus Pre-Trial Motion, 7/2/2014, at ¶ 62. Likewise, at the suppression hearings, he did not attempt to elicit testimony about the seizure of the phone. *See* N.T., 10/1/2014; N.T., 10/24/2014; and N.T. 10/31/2014. Moreover, at the October 31, 2014, hearing, Akes' counsel only indicated that he would be filing a motion in *limine* to preclude the cell phone records, not to suppress the evidence. *See* N.T., 10/31/2014, at 7-8. Accordingly, Akes has not properly preserved this argument and we conclude that it is waived for purposes of appellate review. *See* Pa.R.A.P. 302.

Akes also argues the court erred in granting the Commonwealth's motion to introduce evidence of crimes, wrongs, and other acts under Pa.R.E. 404(b) without allowing him to challenge the telephonic records authorship and authentication pursuant to Pa.R.E. 901. Akes' Brief at 17. Akes states the "Commonwealth's only means of authenticating these messages was to rely upon Officer Jefferson's testimony" and "Officer Jefferson never testified to witnessing [him] utilizing the cell phone, and neither did Officer Cooper or Officer Boudwin." *Id.* at 18. Additionally, he

- 15 -

states no evidence was presented, which identified any person who sent or received the messages. *Id.* at 20.

Our well-settled standard of review is as follows:

When ruling on a trial court's decision to grant or deny a motion *in limine,* we apply an evidentiary abuse of discretion standard of review. The admission of evidence is committed to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous.

***Commonwealth v. Moser***, 999 A.2d 602, 605 (Pa. Super. 2010), *quoting*

***Commonwealth v. Minich,*** 4 A.3d 1063 (Pa. Super. 2010) (citations omitted).

By way of background, the phone was seized from Akes' person incident to his arrest. The police officers then executed a search warrant for the phone. The result of the search was numerous phone records, including text messages. Prior to trial, the Commonwealth filed a notice of intent to use Rule 404(b) evidence, which alleged that Akes sent text messages to an individual named "Quran" describing his mode of operation or common plan with respect to how he engaged in drug trafficking. On the first day of trial, November 5, 2014, an off-the-record discussion was held regarding the motion. Based on the discussion, the trial court then permitted Akes to present evidence of the outgoing call log from the phone and allowed the Commonwealth to present only five drug-related text messages obtained from the phone. N.T., 11/5/2014, at 3-6. Defense counsel sought

- 16 -

clarification that the five messages were the only ones to be admitted "for mimic evidence regarding a comprehensive plan," but did not object to their admission. *Id.* at 5-6. Subsequently, defense counsel did object at the time the first message was admitted into evidence. N.T., 11/6/2014, at 278.

Relying on the parties' discussion that the text messages were being introduced to show a comprehensive plan, the trial court found Akes waived the issue because he "did not object to the messages being admitted for the [Rule] 404(b) purpose[.]" Trial Court Opinion, 5/27/2015, at 11.

We note that even though it appears counsel for Akes did object at the time the evidence was admitted, though it could be considered tardy because he previously had acquiesced to the evidence being admitted for purposes of a comprehensive plan, Akes never argued before the trial court that the evidence was improperly authenticated. Accordingly, Akes again has waived this part of his argument for failure to raise specific objection at trial. *See Commonwealth v. Baumhammers*, 960 A.2d 59, 84 (Pa. 2008) (stating "the absence of a specific contemporaneous objection renders the appellant's claim waived"), *cert. denied*, 558 U.S. 821 (2009). Therefore, Akes' first argument fails in its entirety.

In Akes' second issue, he contends the court erred when it prohibited statements made by Brand and Debose, and Sadler[7] to Officer Jefferson and Investigator Lahmeman. Akes' Brief at 20. Specifically, he asserts that even though these witnesses made out-of-court statements, the statements were made against their penal interests and therefore, should have been admitted. ***Id.***

Keeping in mind our standard of review regarding the admissibility of evidence, we note that Rule 804, which governs exceptions to the rule against hearsay when a declarant is unavailable as a witness, provides, in pertinent part:

> **(a) Criteria for Being Unavailable.** A declarant is considered to be unavailable as a witness if the declarant:
>
> (1) is exempted from testifying about the subject matter of the declarant's statement because the court rules that a privilege applies;
>
> (2) refuses to testify about the subject matter despite a court order to do so;
>
> …
>
> **(b) The Exceptions.** The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness:
>
> …
>
> (3) *Statement Against Interest.* A statement that:

---

[7] Brand and Debose, Akes' co-defendants, were riding in the van at the time of the incident at issue. Sadler's ID and insurance information were found in the car during the search.

(A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and

(B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

Pa.R.E. 804(a)(1)-(2), b(3).

With respect to Brand and Debose, Akes argues their communications to Officer Jefferson, which he penned in an affidavit of probable cause, qualified as statements against their interest and should have been admitted as permissible hearsay evidence because the statements exposed Brand and Debose to criminal liability, both men were unavailable to testify, and the surrounding circumstances indicated a strong *indicia* of veracity and reliability. Akes' Brief at 25-27.

In addressing this claim, the trial court found the following:

[Akes] asserts that th[e trial c]ourt erred when it did not allow counsel to present to the jury exhibit D-1 (The Affidavit of Probable Cause) because the document contained information that was critical to his case.

On cross examination of Officer Johnson, counsel for [Akes] marked the Affidavit of Probable Cause as D-1 and questioned Officer Jefferson using the document. [N.T., 11/6/2014 p. 220-221]. Testimony was elicited that prior to removing the occupants from the vehicle, Officer Jefferson saw Brand and Debose making furtive movements and that when they were ordered out of the vehicle, Brand had a pill on him and Debose had a pill bottle labeled Andre Brand. [N.T. 11/6/2014 p. 223]. The jury heard the evidence that [Akes] is

alleging he was unable to elicit due to this Court's ruling. In addition, counsel for [Akes] insisted in eliciting testimony about Debose and Brand's guilty pleas even despite the Commonwealth and th[e trial c]ourt advising at sidebar that this could lead to the jurors finding guilt by association. [N.T. 11/6/2014 p. 230]. In fact, th[e trial c]ourt gave a cautionary instruction to the jury after counsel elicited that both other individuals in the vehicle pled guilty to the drugs found on their person, that each case stands on its own merits and that [Akes] is not to be found guilty by association. [N.T., 11/6/2014 p. 234] The jury heard all of the evidence that [Akes] was seeking to elicit from D-1.

This Court does not permit documents to be published to the jury by passing out copies during trial. If counsel wished to utilize the document, he should have followed th[e trial c]ourt's instruction that documents presented during trial are to be presented to the jury electronically, not by passing around copies of copious amounts of paper. In fact, counsel was advised that the evidence presenter could be retrieved from legal audio visual located just down the hallway.[12]

[12] In addition to verbally informing counsel for [Akes] of the evidence presenter, th[e trial c]ourt's rules for the courtroom are published on the county webpage and, as such, this was not an unfair surprise to [Akes].

Trial Court Opinion, 5/27/2015, at 18.

We agree with the trial court's well-reasoned analysis. All of the relevant and admissible evidence from the affidavit of probable that Akes now seeks to be admitted was actually disclosed at trial *via* Officer Jefferson's testimony. Even Akes acknowledges that Officer Jefferson specifically testified about Brand's and Debose's statements and

involvement. **See** Akes' Brief at 25.[8] Furthermore, it is unclear from Akes' argument what other evidence was improperly excluded.[9] Moreover, a review of the testimony reveals Akes never complained that the statements made by Brand and Debose to Officer Jefferson were statements against penal interest pursuant to Rule 804(b)(3). Accordingly, to the extent he has not identified other improperly excluded evidence, we conclude this challenge is waived.

Similar to his argument regarding Brand and Debose, Akes argues that with respect to Sadler, her statements to Investigator Lahmeman qualified as statements against her interest and should have been admitted as permissible hearsay evidence because the statements exposed her to criminal liability, she was unavailable to testify, and the surrounding circumstances indicated a strong *indicia* of veracity and reliability. Akes'

---

[8] At trial, it appears counsel for Akes attempted to introduce evidence that Brand and Debose were "sneaky" during processing at the police station, and that more drugs were found on the two men. N.T., 11/6/2014, at 239-240. Brand and Debose apparently made statements as to where these other drugs came from. **Id.** The court precluded the evidence because Brand's and Debose's convictions came in and because what happened at the police station was irrelevant to what occurred in the van. **Id.** at 240. Akes did not raise a claim that this evidence should have been admitted pursuant to Rule 804 or for any other reason.

[9] Akes never explicitly states in his brief what evidence the court improperly refused to admit though it appears the two potential statements are as follows: (1) Brand stated to the officer that he gave the pills to Debose; and (2) Debose told the officer he bought the pills from Brand and that one of the substances found was syrup. Akes' Brief at 25.

Brief at 27. Akes alleges Sadler told Investigator Lahmeman during a recess at the October 24, 2014, proceeding that she had been in the car with only Debose, she left her identification with him, and Akes did not know about this. *Id.* He complains the court erred in preventing Investigator Lahmeman from testifying about Sadler's out-of-court statements. *Id.* Moreover, he states the "veracity of Ms. Sadler's statements to Mr. Lah[m]eman is corroborated by Officer Jefferson's Affidavit of Probable Cause and the black spiral notebook both of which were admitted into evidence at [Akes'] trial in addition to the narcotics recovered from Mr. Debose by Officer Jefferson." *Id.* at 28. Likewise, he asserts a reasonable person in Sadler's place would not have made this statement to Investigator Lahmeman unless she believed it to be true because it exposed her to criminal liability for conspiracy. *Id.*

In addressing this issue, the court found the following:

> [Akes] alleges that this court abused its discretion when it prohibited [Akes'] private investigator, Christopher Lahme[m]an to testify to statements allegedly made to him by Valerie Sadler when he served her with a subpoena for the defense. Counsel sought to have Mr. Lahme[m]an testify that Ms. Sadler told him "I left my Identification cards in the car when I was riding in it alone with Debose." [Akes] alleges prohibiting this testimony created an "unbeatable bias" because Ms. Sadler's statement could have exculpated [Akes].
>
> On November 6, 2014, after th[e trial c]ourt issued a subpoena and sent the sheriff's to find Mr. Brand, counsel for [Akes] raised the issue of having Mr. Lahme[m]an testify. On the record, th[e trial c]ourt asked for an offer of proof, counsel responded:

> "I had raised two issues. This is why I had asked for the material – this is why I asked for the warrant to be served for Ms. Sadler because Ms. Sadler has made a statement regarding the identification and how her driver's license and how her health insurance card ended up in the vehicle Mr. Lonaman [sic] also was able to obtain this statement from Ms. Sadler and this – and at this time – and at the time that Ms. Sadler was in the vehicle only Mr. Debose had been in the vehicle. And due to this, being a circumstantial matter, these would be important circumstances to be able to attack."

[N.T., 11/6/2014 p. 145].

> This Court properly prohibited the testimony as inadmissible hearsay. Even assuming Ms. Sadler qualified under the definition of an unavailable witness, her statement that she left an ID card and insurance card in the vehicle with Mr. Debose at some unknown time prior to the day of the stop and arrest is completely irrelevant and in no way could have exculpated [Akes] from the charges and furthermore, the statement is not even supported by corroborating circumstance that clearly indicate its trustworthiness.

Trial Court Opinion, 5/27/2015, at 16-17.

We agree with the trial court's analysis. Most importantly, we note that even if Sadler could be considered an unavailable witness, Akes does not explain how Sadler's statement was relevant to the stop and search at issue or how it could have exculpated Akes from the charges. Indeed, the pill bottles did not have Sadler's name on them; it was only the insurance information. N.T., 11/6/2014, at 8 ("The only thing of [Sadler's] that's in the vehicle is her identification and a prescription that was not filled."). Accordingly, Akes' second argument is meritless.

In Akes' third issue, he asserts the trial court erred and abused its discretion when it granted the Commonwealth's motion to charge the jury regarding accomplice liability. Akes' Brief at 29. Specifically, he argues the two accomplice liability instructions should not have been given because "there was not a conspiracy charge, the phone records were hearsay and not properly authenticated, and because [Akes] never physically possessed narcotics." *Id.* at 30. Moreover, he states that the two instructions were defective and prejudicial because neither instruction included the accomplice liability exception pursuant to 18 Pa.C.S. § 306. *Id.* at 33. Section 306 provides, in pertinent part:

> **(f) Exceptions. —** Unless otherwise provided by this title or by the law defining the offense, a person is not an accomplice in an offense committed by another person if:
>
> …
>
> **(2)** the offense is so defined that his conduct is inevitably incident to its commission[.]

18 Pa.C.S. § 306(f)(2) (bold in original). Akes contends this "was a critical missing factor as the jury could have determined that Mr. Debose's and/or Mr. Brand's conduct in possessing narcotics could have qualified for this exception." Akes' Brief at 33. Additionally, he states

> [B]y disallowing [the] statements against Mr. Debose's and Mr. Brand's interests … [Akes] had the best evidence to demonstrate he was not an accomplice improperly barred. If [Akes] was allowed to present evidence that Mr. Brand had given and/or sold narcotics to Mr. Debose, the jury could have reasonably concluded [Akes] was not acting as an accomplice, but was

- 24 -

merely present when a crime occurred. Next, the Commonwealth never proved in any manner [that Akes] promoted, facilitated, asked, solicited, agreed, aided, encouraged, or attempted to do any of the following acts. The Commonwealth never introduced any testimony showing [Akes] agreed to in anyway assist with the crimes of possession with intent to distribute a controlled substance and possession of drug paraphernalia.

*Id.* at 33-34. Akes reiterates his previous argument that the only evidence the Commonwealth did present was the "unauthenticated hearsay testimony regarding text messages originating from a phone in [Akes'] hands and an expert's opinion about the detailed hearsay." *Id.* at 34.

Our standard of review for a challenge to a jury instruction is as follows:

[W]hen evaluating the propriety of jury instructions, th[e trial c]ourt will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper. We further note that, it is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.

*Commonwealth v. Antidormi*, 84 A.3d 736, 754 (Pa. Super. 2014) (citation omitted), *appeal denied*, 95 A.3d 275 (Pa. 2014). "A trial court's denial of a request for a jury instruction is disturbed on appeal only if there was an abuse of discretion or an error of law." *Commonwealth v. Johnson*, 107 A.3d 52, 89 (Pa. 2014), *cert. denied*, 136 S. Ct. 43 (U.S. 2015).

Here, the trial court found the following:

> [Akes] asserts that th[e trial c]ourt committed irreversible error by allowing the standard accomplice instruction because "it was prejudicial towards [Akes] because the Commonwealth had never charged him as an accomplice, another person had equal access to the illegal narcotics, [Akes] was charged with possessing, and it was never shown [he] in any way aided, abetted, encouraged, or assisted Brand, Debose, or anyone else with illegal narcotics possession with intent to distribute."
>
> After a request from the Commonwealth, th[e trial c]ourt decided that it would read the standard jury instruction 8.306(a)(1), accomplice liability. Counsel for [Akes] noted his objection on the record prior to the instructions being given: "we object to that, the accomplice charge given to the jury because Mr. Akes here is not being charged with conspiracy as well as Mr. Akes had no drugs found on him. So for those reasons, we're asking the instruction no[t] be given to the jury." [N.T., 11/7/2014 p.4].[11]

---

[11] This Court instructed the jury the following: "There is a way that one defendant can be proved liable for the conduct of another person or persons. That is when the defendant is an accomplice of the person who actually commits the crime at issue. To be an accomplice, the person does not have to agree to help someone else. The person is an accomplice if he on his own to help the other person commits a crime. More specifically, you may find the defendant is an accomplice of another in this case if the following two elements are proved beyond a reasonable doubt. First, that the defendant had the intent of promoting or facilitating the commission of the offense of possession with the intent to deliver and secondly, the defendant solicits, commands, encourages, or requests the other person to commit it or aids, agrees to aid, or attempts to aid the other person in planning or committing it. Accomplice liability must be assessed separately for each crime charged. If two or more crimes are committed and the defendant before you [is] being charged an[d] as an accomplice to each of these crimes, he may not be found liable unless it is shown as each individual crime that this Defendant had the intent of promoting the specific crime and then solicited, commanded, encouraged,

requested the other person to commit it or aided, agreed to aid, or attempted to aid the other person in planning or committing it. In other words, you must decide whether the prosecution proved beyond a reasonable doubt that this defendant was an accomplice to the first crime and to the second crimes charged. It is important to understand that a person is not an accomplice merely because he is present when a crime is committed or knows that a crime is being committed. And this, ladies and gentlemen, applies to the possession with intent to deliver and possession of drug paraphernalia. To be an accomplice, the defendant must specifically intend to help bring about the crime by assisting another in its commission. A person who is an accomplice will be responsible for a crime if and only if the person, before the other person commits the crime, either stops his own efforts to promote or facilitate the commission of the crime and either wholly apprised his previous efforts of effectiveness in the commission of the crime and gives timely warning to the law enforcement authorities or otherwise makes a proper effort to prevent the commission of the crime. [N.T., 11/7/2014 p. 88-90].

[Akes'] assertion that conspiracy was not charged and therefore the accomplice liability instruction could not be given is wholly inaccurate and disregards that the two are entirely separate concepts.

In addition, [Akes] states that th[e trial c]ourt re-reading the accomplice liability instruction to the jury when they had a question was also prejudicial. During deliberations on November 7, 2014, at 1:23 p.m., the jury wrote a note that they were struggling to reach an agreement on Count 1: PWID and needed further instruction with regards to accomplice liability. This Court again explained accomplice liability. [N.T., 11/7/2014 p.105-106]. Afterwards, in light of the explanation of accomplice liability, th[e trial c]ourt asked counsel if there was anything else they would like to elaborate on or explain, counsel for [Akes] answered in the negative. Counsel for [Akes] did not object to th[e trial c]ourt's explanation of accomplice liability and is therefore waived; however, even if the Court finds that it is not, [Akes] was not prejudiced by th[e trial c]ourt clarifying accomplice liability.

Trial Court Opinion, 5/27/2015, at 13-14.

We again agree with the trial court's determination. It merits mention that Akes only objected to the instruction being given to the jury because he was not charged with conspiracy and no drugs were found on him. N.T., 11/7/2014, at 4. In his argument, Akes still appears to believe that because he was not charged with conspiracy, the theory of accomplice liability cannot be applied to his case. As the trial court points out, this is incorrect as the two concepts are entirely separate and distinct. Moreover, Akes was on notice from the time the complaint and information were filed that the Commonwealth intended to show Akes acted in concert with Brand and Debose.[10]

Additionally, counsel for Akes did not object to the content of the accomplice liability instruction. The Pennsylvania Rules of Criminal Procedure indicate that "[n]o portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate." Pa.R.Crim.P. 647(C). Furthermore, "the mere submission and subsequent denial of proposed points for charge ... will not suffice to preserve an issue, absent a specific objection or exception to the charge or the trial court's ruling respecting the points." **Commonwealth v. Sanchez**, 82 A.3d 943, 978 (Pa. 2013) (citation omitted); **see also** Pa.R.A.P. 302(b) ("Charge to jury. A general

---

[10] Indeed, the Commonwealth filed a notice of intent to try the three men together pursuant to Pa.R.Crim.P. 582. **See** Information, 4/16/2014.

exception to the charge to the jury will not preserve an issue for appeal. Specific exception shall be taken to the language or omission complained of.").  As such, any challenge to the specific language of the accomplice liability jury instruction in the present matter has been waived.  Accordingly, Akes' third argument fails.

In Akes' penultimate issue, he claims:

[His] federal rights to confront his accusers, due process, and equal protection of the laws were violated where the court abused its discretion and impermissibly limited [his] cross examination of arresting Officer Jefferson regarding statements made to him by Mr. Brand and Mr. Debose[,] and where the trial court prevented [him] from asking opinion based questions of the Commonwealth's witness[,] Officer Boudwin[,] who was certified as an expert in controlled substance investigations, illegal drug operations, and related terminology.

Akes' Brief at 34-35 (some capitalization removed).

With respect to Officer Jefferson, Akes mainly reiterates his prior argument that he was prohibited from questioning the officer about Brand and Debose's actions and statements after they were processed in the police station.  *Id.* at 36-37.  Akes states the court's determination that these statements were inadmissible hearsay curtailed his right to confrontation and violated his right to introduce statement against another's interest.  *Id.* at 37.  Moreover, he states the court prevented him from asking Officer

Jefferson his opinion regarding individuals with Xanax on their person and money in multiple pockets. *Id.* at 41.[11]

With regard to Officer Boudwin, who was testifying as an expert witness regarding Akes' narcotics operation, Akes complains the court impermissibly limited his cross-examination. *Id.* at 40. Specifically, the court erred in barring him from asking whether Akes was under investigation prior to his participation in the case and if the officer found any person Akes was alleged to have recruited. Akes states the court's ruling preventing him from demonstrating bias, lack of knowledge, and lack of corroboration. *Id.* Akes argues he had a right to question Officer Boudwin about Brand's and Debose's conduct. *Id.* at 42.

We are governed by the following:

> The Confrontation Clause in the Sixth Amendment to the United States Constitution provides that all criminal defendants enjoy "the right to confront and cross-examine adverse witnesses." *Commonwealth v. Laird*, 605 Pa. 137, 988 A.2d 618, 630 (Pa. 2010). Moreover, "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Delaware v. Van Arsdall*, 475 U.S. 673, 678, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986).

> Although the right of cross-examination is a fundamental right, it is not absolute. The trial court may place reasonable limits on defense counsel's cross-examination of a prosecution witness "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'

---

[11] Akes was attempting to show that the officer found money from multiple pockets of Debose but from only one pocket of Akes.

safety, or interrogation that is repetitive or only marginally relevant." **Van Arsdall**, 475 U.S. at 679. "Generally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." **Delaware v. Fensterer**, 474 U.S. 15, 20, 106 S. Ct. 292, 88 L. Ed. 2d 15 (1985).

**Commonwealth v. Rosser**, __ A.3d __, 2016 PA Super 51 [3258 EDA 2013] (Feb. 26, 2016) (*en banc*).

With respect to Officer Jefferson's testimony, we note that as indicated above, the jury heard both Brand and Debose made furtive movements outside the car, both had pill bottles on their person, and both entered guilty pleas in related matters. Therefore, any additional testimony would have been repetitive or marginally relevant.

Moreover, as the trial court properly found in addressing his claim regarding the questioning of Officer Jefferson about his opinion as to finding Xanax on the person and money in multiple pockets:

> First, counsel's question was in relation to Debose and not [Akes]. The objection from the Commonwealth was sustained because the question was outside the scope of direct and solely related to Debose. In addition, when counsel rephrased the question and asked "it is a common practice for people who are selling narcotics to keep money in different pockets" the Commonwealth's expert stated that it was common to keep money in different pockets and included an entire explanation as to why. The jury heard the evidence that [Akes] is alleging he was unable to elicit.

Trial Court Opinion, 5/7/2015, at 20. Accordingly, based on the court's explanation, we find Akes' argument is unavailing.

- 31 -

With respect to Officer Boudwin's testimony, we find Akes has failed to include this issue in his Rule 1925(b) concise statement.[12] It is well-established that in order "to preserve their claims for appellate review, appellants must comply whenever the trial court orders them to file a Statement of [Errors] Complained of on Appeal pursuant to [Rule] 1925. Any issues not raised in a [Rule] 1925(b) statement will be deemed waived." **Commonwealth v. Castillo**, 888 A.2d 775, 780 (Pa. 2005), *quoting* **Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998). **See also** Pa.R.A.P. 1925(b)(4)(vii); **Commonwealth v. Dozier**, 99 A.3d 106, 110 (Pa. Super. 2014), *appeal denied*, 104 A.3d 523 (Pa. 2014) (appellant's issues waived for failure to present them in his concise statement). Therefore, this issue is waived.

In Akes' final argument, he asserts Officer Jefferson made remarks about defense counsel being a public defender, which "was prejudicial and created irreparable harm for which a sua sponte mistrial should have been granted, and the trial court abused its discretion when it failed to grant one as the substantial ends of justice could not be attained and manifest necessity required such an order." Akes' Brief at 43.

---

[12] A review of the concise statement reveals that Akes only attacked the limitation on his cross-examination of Officer Jefferson and not Officer Boudwin. **See** Concise Statement of Errors Complained of on Appeal, 5/4/2015, at ¶¶ 45-48.

A review of the record reveals the following. On direct examination, Officer Jefferson was asked if he saw the person driving the vehicle at issue in the courtroom. N.T., 11/6/2014, at 179. He replied in the affirmative as to Akes and stated, "Sitting next to the public defender, white shirt, blue tie." *Id.* Counsel for Akes subsequently said, "And, Your Honor, could you instruct the witness that I am not a public defendant; I'm actually a private attorney[.]" *Id.* at 179-180. The court agreed and gave the following instruction, "Yes. Ladies and gentlemen, strike that reference. [Prosecutor], caution your witness they're not to comment on the attorneys." *Id.* at 180.

Counsel for Akes did not object or ask for a mistrial. Likewise, he did not object after the trial court instructed the jury to strike the reference.[13] Accordingly, for all practical purposes, Akes has waived this claim. *See* Pa.R.A.P. 302.

Moreover, we are guided by the following:

It is within a trial judge's discretion to declare a mistrial *sua sponte* upon the showing of manifest necessity, and absent an abuse of that discretion, we will not disturb his or her decision. *Commonwealth v. Leister,* 712 A.2d 332, 334 (Pa. Super. 1998), (citing *Commonwealth v. Gains,* 383 Pa. Super. 208, 556 A.2d 870 (Pa. Super. 1989)); Pa.R.Crim.P. 1118(b) (amended and renumbered as Rule 605, effective April 1, 2001). Where there exists manifest necessity for a trial judge to declare a mistrial *sua sponte*, neither the Fifth Amendment to the United States Constitution, nor Article I, § 10 of the Pennsylvania

_____

[13] We also note that while Akes raised the issue in his December 29, 2014, post-sentence motion, he did not pursue the claim at the February 3, 2015, hearing on the motion.

Constitution will bar retrial. *Leister,* 712 A.2d at 335, (citing *Commonwealth ex rel. Walton v. Aytch,* 466 Pa. 172, 352 A.2d 4 (Pa. 1976)).

In *Commonwealth v. Diehl,* 532 Pa. 214, 615 A.2d 690, 691 (Pa. 1992), our Supreme Court, when considering whether manifest necessity for the trial court's *sua sponte* declaration of a mistrial existed, stated:

> Since Justice Story's 1824 opinion in *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L. Ed. 165, it has been well settled that the question whether under the Double Jeopardy Clause there can be a new trial after a mistrial has been declared without the defendant's request or consent depends on where there is a manifest necessity for the mistrial, or the ends of public justice would otherwise be defeated. *Commonwealth v. Bartolomucci,* 468 Pa. 338, 362 A.2d 234 (1976), citing *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L. Ed. 2d 267 (1976). It is important to note that in determining whether the circumstances surrounding the declaration of a mistrial constitute manifest necessity, we apply the standards established by both Pennsylvania and federal decisions. *Commonwealth v. Mitchell,* 488 Pa. 75, 410 A.2d 1232 (1980).

Pennsylvania Rule of Criminal Procedure 1118(b) provides that:

> When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed. Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity.

> In accordance with the scope of our review, we must take into consideration all the circumstances when passing upon the propriety of a declaration of mistrial by the trial court. The determination by a trial court to declare a mistrial after jeopardy has attached is not one to be lightly undertaken, since the defendant has a substantial interest in having his fate determined by the jury first impaneled. *Commonwealth v. Stewart,* 456 Pa. 447, 452, 317 A.2d 616, 619 (1974), citing *United States v. Jorn,* 400 U.S.

470, 91 S.Ct. 547, 27 L. Ed. 2d 543 (1971). Additionally, failure to consider if there are less drastic alternatives to a mistrial creates doubt about the propriety of the exercise of the trial judge's discretion and is grounds for barring retrial because it indicates that the court failed to properly consider the defendant's significant interest in whether or not to take the case from the jury. **Commonwealth, ex rel. Walton v. Aytch,** 466 Pa. 172, 352 A.2d 4 (1976). Finally, it is well established that any doubt relative to the existence of manifest necessity should be resolved in favor of the defendant. **Bartolomucci,** 468 Pa. at 347, 362 A.2d 234.

We do not apply a mechanical formula in determining whether a trial court had a manifest need to declare a mistrial. "Rather, 'varying and often unique situations arise during the course of a criminal trial . . . [and] the broad discretion reserved to the trial judge in such circumstances has been consistently reiterated . . . .'" **Leister,** 712 A.2d at 335, quoting **Illinois v. Somerville,** 410 U.S. 458, 462, 93 S. Ct. 1066, 1069, 35 L. Ed. 2d 425 (1973); **Commonwealth v. Morris,** 2001 PA Super 112, 773 A.2d 192, 194 (Pa. Super. 2001). The trial judge, who is the foremost authority in his or her courtroom, is usually in the best position to determine the necessity of recusal in any individual case. **Leister,** 712 A.2d at 335, citing **Wade v. Hunter,** 336 U.S. 684, 69 S. Ct. 834, 93 L. Ed. 974 (1949) and **In Interest of Morrow,** 400 Pa. Super. 339, 583 A.2d 816, 818 (Pa. Super. 1990); **Morris,** 773 A.2d at 194. This principle assumes great weight when the issue involves how the presentation of evidence or the conduct of parties affects a trial's fact-finder. **Leister,** 712 A.2d at 335, citing **Arizona v. Washington,** 434 U.S. 497, 514, 98 S. Ct. 824, 834-35, 54 L. Ed. 2d 717 (1978) and **Commonwealth v. Smith,** 321 Pa. Super. 51, 467 A.2d 888, 891 (Pa. Super. 1983); **Morris,** 773 A.2d at 194.

**Commonwealth v. Kelly**, 797 A.2d 925, 936-37 (Pa. Super. 2002).

Based on the record presented above, we find the circumstances do not demonstrate a manifest necessity that would have compelled the court to declare a mistrial *sua sponte*. The reference to defense counsel's status

was extremely brief, it was immediately corrected, and the court instructed the jury to strike the comment. We find any prejudice suffered by Akes was mitigated by the court's instructions to the jury. ***See Commonwealth v. Passarelli***, 789 A.2d 708, 713 (Pa. Super. 2001) ("Furthermore, our law presumes that juries follow the trial court's instructions as to the applicable law. Thus, any prejudicial effect from the prosecutor's statement was cured by the trial court's general cautionary instruction to the jury.") (citation omitted), *aff'd*, 825 A.2d 628 (Pa. 2003). Accordingly, Akes' final argument fails.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/26/2016